UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

KENTUCKY FARM BUREAU MUTUAL
INSURANCE COMPANY                                                                    PLAINTIFF


v.                                                                  CIVIL ACTION NO. 3:13-CV-1085-CRS


A.O. SMITH CORPORATION                                                               DEFENDANT


**MEMORANDUM OPINION**

This matter is before the court on motion of the defendant, AO. Smith Corporation, for summary judgment in this product liability action. The action was removed from the Nelson County, Kentucky, Circuit Court under our diversity jurisdiction. Plaintiff Kentucky Farm Bureau Mutual Insurance Company ("KFB") sought remand to state court which has been denied by separate order.

KFB has filed this action as subrogee to the rights of its insured, Connie Bradshaw. Bradshaw suffered property damage in her residence on August 18, 2012 when a water heater manufactured by A.O. Smith leaked. KFB reimbursed her pursuant to the terms of her homeowner's insurance policy with KFB for the costs incurred in repairing the damage to her property as well as her lodging costs. KFB now seeks damages from A.O. Smith, alleging that the water heater was defective.

A party moving for summary judgment has the burden of showing that there are no genuine issues of fact and that the movant is entitled to summary judgment as a matter of law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 151-60, 90 S. Ct. 1598, 16 L. Ed. 2d 142 (1970);

*Felix v. Young*, 536 F.2d 1126, 1134 (6th Cir. 1976). Not every factual dispute between the parties will prevent summary judgment. The disputed facts must be material. They must be facts which, under the substantive law governing the issue, might affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2510 (1986). The dispute must also be genuine. The facts must be such that if they were proven at trial, a reasonable jury could return a verdict for the non-moving party. *Id.* at 2510. The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial. *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288-89 (1968). The evidence must be construed in a light most favorable to the party opposing the motion. *Bohn Aluminum & Brass Corp. v. Storm King Corp.*, 303 F.2d 425 (6th Cir. 1962).

The essential facts of the case are undisputed. A.O. Smith manufactured the water heater in November of 2003. It was installed in Bradshaw's newly-constructed home prior to March 1, 2004. The unit was installed on a closed water system in the home. The owner's manual advises that, with such an installation, "[e]xcessive pressure may develop due to the thermal expansion of heated water causing premature tank failure…An expansion tank may be necessary in the cold water supply to alleviate this situation…" (DN 37-7, p. 3). The installer did not put in an expansion tank. The water heater functioned without incident and was neither serviced nor repaired for any reason prior to the day on which the tank leaked, August 18, 2012.

The water heater carried a six-year replacement warranty on the tank running from the original installation date. The owner's manual also contained a one-year limitation on implied warranties, including any warranty of merchantability. After approximately nine years of use and after expiration of the replacement warranty, the tank leaked as a result of corrosion of the

2

metal at a seam in the sidewall of the tank. Upon examination of the tank during this litigation, it was discovered that the anode rod within the tank was completely consumed down to the wire supports.

Under Kentucky law, there are three recognized causes of action for product liability – ordinary negligence, strict liability in tort, and breach of warranty under the Uniform Commercial Code ("UCC"). *Ostendorf v. Clark Equip. Co.*, 122 S.W.3d 530, 535 (Ky. 2003). Under the Kentucky Product Liability Act, KRS 411.300-350, Kentucky's codification of the Restatement (Second) of Torts, § 402A, a manufacturer may be found strictly liable for the sale of "any product in a defective condition unreasonably dangerous to the user or consumer." *Nichols v. Union Underwear Co., Inc.,* 602 S.W.2d 429, 433 (Ky. 1980). "The strict liability standard is no different from that of negligence…except that the seller is presumed to have knowledge of the actual condition of the product when it leaves his hands. In other words, as long as the product is shown to be in a defective condition when sold, the plaintiff need not go further and prove that the seller knew or should have known of the defect." *Id.*

Strict liability may be proven under theories of a manufacturing defect, design defect, or failure to warn, *Clark v. Hauck Mfg. Co.*, 910 S.W.2d 247, 251 (Ky. 1995), *overruled on other grounds* by *Martin v. Ohio Cnty. Hosp. Corp.*, 295 S.W.2d 104 (Ky. 2009), but essential to each theory is proof of a "defect." *Prather v. Abbott Labs.*, 960 F.Supp.2d 700, 706 (W.D. Ky. 2013). Disappointed consumer expectations alone do not establish a defect. *See Nichols*, 602 S.W.2d at 433. "Where an incident could result from more than one cause, plaintiff tips the balance from possibility to probability only by ruling out other theories or causation: '[W]here an injury may as reasonably be attributed to a cause that will excuse the defendant as to a cause that will subject

it to liability, no recovery will be had.'" *In re Beverly Hills Fire Lit.*, 695 F.2d 207, 218 (6th Cir. 1982)(*quoting Sutton's Adm'r v. Louisville & Nashville R.R. Co.,* 181 S.W. 938, 940 (Ky. 1916).

KFB alleges a manufacturing defect. The water heater's design and the warnings contained in the owner's manual are not challenged in this action. KFB also claims breach of express and implied warranties.[1]

Due to the age of the water heater at the time of its failure, we start from the statutory presumption that there was no manufacturing defect. KRS 411.310(1) states that "[i]n any product liability action, it shall be presumed, until rebutted by a preponderance of the evidence to the contrary, that the subject product was not defective if the injury, death or property damage occurred either more than five (5) years after the date of sale to the first consumer or more than eight (8) years after the date of manufacture." The undisputed facts establish that the water heater failed more than eight years after manufacture and more than five years after its sale to Bradshaw. Therefore, the presumption exists with respect to this product that it was manufactured without defect.

KFB attempts to rebut this presumption through the opinions of its expert witness, Crawford Hill.[2] KFB offers no other evidence. As will be explained more fully below, Hill's opinions are deficient. Thus, KFB's claims cannot withstand summary judgment.

---

[1] We note that 411.320(1) provides that "In any product liability action, a manufacturer shall be liable only for the…property damage that would have occurred if the product had been used in its original, unaltered, and unmodified condition. For purposes of this section, product alteration or modification shall include failure to observe routine care and maintenance…" It is undisputed that no maintenance or inspection was performed on this water heater. The system was never flushed nor was the anode rod inspected and replaced as indicated in the owner's manual. The anode rod was completely consumed at some time prior to the tank failure. However, A.O. Smith has not argued that the claim is statutorily precluded due to failure to observe routine care and maintenance. We therefore do not decide as much here.

The warranty claims require little comment. The only express warranty identified with respect to this water heater is the replacement warranty contained in the owner's manual. It is undisputed that this warranty expired prior to the leak in 2012. The Limited Residential Electric Warranty contemplates the possibility of a leak in the tank "due to natural corrosion from potable water therein" during the six-year warranty period and warrants a replacement for such failure during normal residential use. DN 37-7, p. 8. As there is nothing in the language of the warranty which "expressly provide[s] some form of guarantee that the product will perform in the future as promised," *Electric Inssurance Co. v. Freudenberg-Nok, Gen. Partnership*, 487 F.Supp.2d 894, 904 (W.D.Ky. 2007), KFB's argument that an implied warranty of merchantability and fitness for a particular purpose extends the six-year warranty period is without merit. In any event, an express provision in the Limited Residential Electric Warranty restricts any implied warranty under state law to one year.

KFB's claim for defective manufacture requires a bit more discussion.

Hill provided two expert reports (DNs 37-2; 37-3) concerning the water heater in issue. He was also deposed concerning his opinions in February of 2015 (DN 37-5).

Hill's second report incorporated the conclusions found in his first report:

(1) The water heater leaked during laboratory testing due to internal corrosion.

(2) The anode is consumed.

(3) The manufacturer requires the anode to be inspected every three years, but the practicality of this maintenance is questionable.

---

[2] There is a recently filed motion to exclude Hill's testimony pursuant to *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) pending. We need not address that motion, as we conclude herein that Hill's opinions fail to overcome the presumption of the lack of a defect in the product.

 (4) The water heater failed after approximately nine years of use.

 (5) The cause of failure is a manufacturer's defect.

In that first report, Hill explained the use of a sacrificial anode rod:

> The sacrificial anode is a metal rod, usually magnesium or aluminum, which preferentially corrodes faster than the ferrous metal tank. Rust and corrosion are the results of weak electrical currents or electrolysis that form between many metals. The pathways of these currents are changed with the use of a sacrificial anode, thus protecting the water heater's tank. Once the anode is consumed or disconnects from the cap nut, insulating it from the steel tank, this line of protection is no longer available, and corrosion of the steel tank will accelerate.

The owner's manual (DN 37-7) contained essentially the same explanation of the anode rod's function in a section entitled "Anode Rod Maintenance." The manual specifically states that the anode rod is used to protect the tank from corrosion by water ions. Thus it is clear from the owner's manual, and confirmed by KFB's expert that corrosion caused by water ions is expected to occur over time in ferrous metal tanks, and that steps are taken such as the employment of sacrificial anodes to slow the natural process. The owner's manual states that the anode rod should be inspected a number of times during the first year to ensure that it is not being consumed too quickly, a sign that there is high water conductivity and that the rod should be more frequently checked or replaced by a qualified technician to maintain the anode rod's usefulness.

 Indeed, Hill's deposition testimony concerning the natural life of water heater tanks is telling:

 Q: Water heaters, gas and electric, do not have an unlimited life, true?

    Hill:  True.

    Q:  …At some point, water heaters, because they don't have unlimited life, will result in end of life scenario with a water leakage, right?

    Hill:  Right.

    Q:  Did you check the sacrificial anode?

    Hill:  …Yes sir.

    Q:  Was it intact?

    Hill:  No.

    Q:  Was it completely consumed?

    Hill:  Consumed down to the metal support wire.

    In October of 2014, Hill attempted to more specifically identify a manufacturing defect which, in the first report, he concluded existed without identifying said defect.  He stated that:

> The rupture in the inner steel pressure tank is characteristic of internal corrosion…In order to protect the steel shell from rusting, the manufacturer coats the water chamber with an anticorrosion coating.  A defect in the tank's internal coating allowed water to contact the steel tank directly, which caused the corrosion...Potential failure modes for the internal coating include thickness of the coating, steel shell surface preparation, or material deficiency associated with the coating…The corrosion of the tank, which resulted in a breach of the pressure vessel, represents a failure of the manufacturer's application of the anticorrosive lining material at the location of failure…
>
> The internal anticorrosion protective lining has failed, allowing water to contact the steel tank directly, which caused corrosion.  Eventually, the corrosion breached the outer wall of the tank, and a leak was formed.  The tank has failed to withstand the environment associated with its application.  The water loss is the result of a manufacturer's defect associated with the tank's construction.  The

failure is unrelated to the actions of the installer or user…A 2007 study by the National Association of Homebuilders gave an expected estimated life for an electric water heater as 11 years…

In probing Hill's opinions on the purported manufacturing defect, the following exchange occurred:

Q: What is the manufacturer's defect?

Hill: A failure of the lining covering the location of fracture versus above it and below it it did not fail. So what's different about that area.

Q: I'm sorry?

Hill: So –

Q: Did you say what's different about that area?

Hill: Yeah. Sorry. Just something different about that area where the fracture occurred versus above it and below it. If it was all uniform, then why didn't the area above it fail – corrode out and fail, or the area below it corrode out and fail.

Q: Just because a water heater leaks, it's not necessarily defective?

Hill: True statement.

The quoted sections of Hill's report and his deposition testimony reveal that his attempt to articulate a manufacturing defect is, in fact, nothing more than an acknowledgement that the tank corroded and leaked. All "expertspeak" aside, Hill discussed the occurrence of corrosion in the tank, but did not establish the cause. He stated in his deposition that the defect was a failure

8

of the tank lining. The "failure" of the lining, the leak, was, indisputably, the result of corrosion. He surmises that "the corrosion… represents a failure of the manufacturer's application of the anticorrosive lining material at the location of failure" not because he has any knowledge, expert or otherwise, that he shares concerning application of an anticorrosive material, but rather solely because nine years after manufacture he observed no corrosion above or below the corroded area where the tank leaked. He contends in the 2014 report that "[t]he internal anticorrosion protective lining has failed…The tank has failed to withstand the environment associated with its application." That is, the tank corroded due to the effects of water on metal. However, Hill's testimony confirms that water in a water heater naturally corrodes the metal tank and that it will eventually leak.

Hill also noted in that report that an "estimated life" for an electric water heater is 11 years, and that Bradshaw's water heater "failed within its commonly expected lifetime under operating conditions as intended by the manufacturer." That conclusion is actually contradicted by Hill's other statements in his report and his testimony. Hill admitted that the anode rod was completely consumed down to the metal support wires in the tank. He also admitted that after consumption of the anode rod, the protection from corrosion by water ions is gone and that corrosion will accelerate. He also admitted that the water heater was installed on a closed water system without the installation of an expansion tank. The owner's manual anticipates that under such circumstances, "[e]xcessive pressure may develop due to the thermal expansion of heated water causing premature tank failure" There is nothing in the record establishing an expected lifetime for a water heater operating under conditions clearly *not* intended by the manufacturer, such as in the event of a consumed anode rod or operation without an expansion tank on a closed water system. Thus the corrosion of the tank after nine years of operation does not, in and of

9

itself, suggest a manufacturing defect as there is no certain life expectancy under accelerating circumstances and, in any event, the manufacturer's warranty expired long before this product failed.

As Hill has stated nothing more than that corrosion by water occurred, he has failed to rule out other causes of the corrosion in this nine-year-old water heater, including the natural corrosion process by water ions that he admits occurs, and other undisputed possible causes of acceleration of the corrosion process. For these reasons, the motion for summary judgment by A.O. Smith will be granted and the action will be dismissed with prejudice. A separate order and judgment will be entered this date in accordance with this opinion.

**IT IS SO ORDERED.**

March 17, 2016

**Charles R. Simpson III, Senior Judge**
**United States District Court**